AYLLON et al. v. GONZALEZ et al.

(Circuit Court of Appeals, First Circuit.   March 21, 1923.)

No. 1501.

1. **Guardian and ward ⬤⟾108—Under laws of Porto Rico, sale of land of minors by tutor, who has not given bond and procured registry of his appointment, is void.**

   Civ. Code Porto Rico, §§ 243, 270, and 273, providing that a tutor appointed for minors shall, "before · assuming his duties," give bond, and that he "shall not enter upon the discharge of his duties" until · he has given bond and his appointment has been recorded in the registry of tutorships, procedure for which is prescribed in other provisions, are mandatory, and a sale of land of minors by a tutor who has not complied with their provisions is void.

2. **Infants ⬤⟾24—Good faith requisite under law of Porto Rico.**

   One who acquires real property of minors in a manner unauthorized by law, of which he has notice from the records, is not a possessor in good faith, and cannot acquire ownership by possession under Civ. Code Porto Rico, § 1858.

3. **Vendor and purchaser ⬤⟾228(1)—Purchaser of land with notice of grantor's invalid title not entitled to benefit of Porto Rico Mortgage Law, § 34; "purchaser in good faith."**

   Purchaser of land with notice from the records that his grantor's title is void *held* not a "purchaser in good faith," entitled to the protection of Porto Rico Mortgage Law, §§ 33, 34.

   [Ed. Note.—For other definitions, see Words and Phrases, Second Series, Purchaser in Good Faith.]

4. **Courts ⬤⟾405(11)—Amount involved held sufficient to give appellate jurisdiction.**

   On appeal from a decree of the Supreme Court of Porto Rico, in a suit involving not only a money award, but also title to land, the value of the land enters into the amount involved for jurisdictional purposes.

⬤⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

Appeal from the Supreme Court of Porto Rico.

Suit in equity by Leonor Ayllon y Ojeda and others against Ramon Gonzales y Fernandez and others. Decree for defendants, and complainants appeal. On the merits and on motion by appellees to dismiss appeal. Motion denied, dercee reversed, and case remanded.

Hugh R. Francis, of San Juan, P. R., for appellants.

Philip N. Jones, of Boston, Mass. (Boyd B. Jones and Hurlburt, Jones & Hall, all of Boston, Mass., and Monserrat & Monserrat, of San Juan, P. R., on the brief), for appellee B. Fernandez & Bros., Successors.

Jose C. Silva, of San Juan, P. R., for appellee Hubadron.

Before BINGHAM and JOHNSON, Circuit Judges, and BREWSTER, District Judge.

BINGHAM, Circuit Judge. This action was brought by Leonor Ayllon, in her own right and as guardian ad litem of her minor brother and sister, against Ramon Gonzales, Fernandez & Bros., and Julian Silva, seeking to have certain deeds of real estate, claimed by them as heirs of their father, Pedro Ayllon, executed by Ramon Gonzales to Fernandez & Bros., and by Fernandez & Bros. to Silva, and their records in the registry of property, declared nullities, that they be repossessed of the land, and that the defendants pay the plaintiffs the sum of $14,000 as profits derived from the use thereof.

The facts are as follows: Pedro Ayllon died, leaving a will in which he made his minor children his heirs and appointed Ramon Gonzales tutor or testamentary guardian of the children, but without relieving him from the duty of giving bond. Gonzales never qualified as tutor or testamentary guardian by giving bond, taking the oath required by law, and having his appointment recorded in the registry of tutorships. Shortly after the father's death, Gonzales, having failed to qualify as aforesaid, caused the real estate in question to be recorded in the registry of property in the names of the minor heirs, and applied to the district court of San Juan and procured an order allowing him to sell the real estate at public auction for a sum not less than $6,000. He advertised the sale for two days in the Boletin Mercantil, and two days later, January 14, 1907, sold the same before a notary public to Fernandez & Bros. for $6,000. In August, 1912, Fernandez & Bros. sold the same property to Silva.

This suit was brought July 11, 1917, or about 10 years and 6 months after the date of the sale to Fernandez & Bros.

In the district court it was held that the deed to Fernandez & Bros. was void; that at the time of the sale and execution of the deed Ramon Gonzales was not the tutor of the minors; that, while he acquired the appellation of tutor, he was not such; that he had never complied with section 243 of the Civil Code, which provides that "the tutor shall not enter upon his duties without his appointment having been recorded in the registry of tutorships," nor with section 270, which provides that "the tutor shall, before assuming his duties, give bond for the good results of his management," nor with section 273, which provides that "the tutor shall not enter upon the discharge of his duties until having

given the bond required by the District Court"; and that, because of his failure in these respects, the petition to sell, the execution of the sale, and the deed were absolutely null and void. He also held that Fernandez & Bros. were not entitled to avail themselves of the ordinary prescription of 10 years (Civ. Code, § 1858), as they did not hold under a just title and in good faith, and that, as to Silva, he was likewise not a possessor in good faith with proper title, and, furthermore, could not successfully invoke the provisions of article 34 of the Mortgage Law.

In the Supreme Court it was held that the failure of the tutor to qualify by giving bond, etc., did not render his acts void, and that the district court which authorized the tutor to make the sale had jurisdiction of the parties and of the subject-matter; that, the sale and transfer by the tutor to Fernandez & Bros. being voidable, the latter were entitled to avail themselves of the ordinary prescription of 10 years (Civil Code, § 1858); and that Silva was entitled, not only to the benefit of the prescription in favor of Fernandez & Bros., but was a third person within the meaning of article 34 of the Mortgage Law, as the title of Fernandez & Bros. was recorded, and no defect in their record title clearly appeared in the registry. Having reached this conclusion, the Supreme Court reversed the judgment of the lower court and dismissed the complaint.

[1] In addition to what is above set forth in sections 243, 270, and 273 of the Civil Code relating to tutors, provision is made in sections 297 to 301 of the Civil Code for keeping record books in the respective district courts of Porto Rico in which entries shall be made of tutorships constituted during each year and what those records shall contain.

In sections 72 to 76 of the act relating to special legal proceedings, being sections 1611 to 1615 of the Revised Statutes of Porto Rico, a testamentary guardian who has furnished the requisite bond, when not excused from so doing, is required to petition the court and obtain an order for the recording of his appointment in the registry of tutorships and, the order having been issued and recorded, and the fact of record noted on the order, the order with the notice of the record upon it is required to be returned to the court, which shall put the guardian in possession of his office after he takes the oath faithfully to perform his duties.

And sections 80 to 82 of the act relating to special legal proceedings, as they existed from 1905 to 1911, point out what steps a tutor, who has been duly accredited to act as such, must take to alienate or incumber the real estate of his minor.

It is to be noted that the laws of Porto Rico point out with much nicety and particularity what a tutor, whether nominated in a will or not, must do to entitle him to enter upon the duties of his office and act as such tutor; and that they expressly provide that "the tutor shall, *before assuming his duties,* give bond for the good results of his management" (section 270, supra); that he "*shall not enter upon the discharge of his duties*" until having given the bond required by the district court" (section 273, supra); and he "*shall not enter upon his duties* without his appointment having been recorded in the registry of tutorships" (section 243, supra). There can be no mistaking the meaning

of this language. It is mandatory, and advisedly so, for, if it were not, minors could be easily stripped of their property (by designing and unscrupulous persons.

A similar question to the one now before us came before the Court of Appeals of New York in Wuesthoff v. Germania Life Insurance Co., 107 N. Y. 580, 14 N. E. 811. In that case it appeared that the defendant company issued a policy of insurance on the life of Frederich Wuesthoff, father of the plaintiff minors, payable in case of his then wife's death before his to her children or their guardian, if under age. Frederich Wuesthoff resided in New Jersey, where the policy was issued, and continued so to do up to the time of his death. He survived his wife and remarried. By his will he appointed his second wife guardian of his children by his first wife, who were infants. As such guardian she served on the company notice and proof of Frederich's death, that of the first wife, and a copy of the will, and the company paid her the amount of the policy. By the law of New Jersey, where the contract was made, a father could by will dispose of the custody and tuition of his minor children during minority, and the person so authorized was empowered to "take into his, her or their custody, for the use of such child or children, the profits of all lands, tenements, and hereditaments of such child or children; and also the custody and management of the goods, chattels and personal estate of such child or children till his or her or their respective age of twenty-one years, * * * and may bring such action or actions in relation thereto, as by law a guardian in common socage might do." Revision N. J. 1877, p. 464, § 1. But it was further provided (Id. p. 762, § 48) that "every guardian, appointed by last will and testament, which shall be legally proved and recorded, shall, before he exercises any authority over the minor or his estate, appear before the orphans' court and declare his acceptance of the guardianship, which shall be recorded, and shall give bond, with such sureties and in such sum as the said court may approve of and order, for the faithful execution of his office, unless it is otherwise directed by the testator's will." The will did not excuse the guardian from giving bond, and the guardian had not, at the time she received payment of the policy, declared her acceptance of the guardianship nor given bond, and no bond or security was ever given.

It was held that the provision of the statute excluding the guardian from exercising any authority over a minor or his estate until he had appeared before the orphans' court and declared his acceptance of the guardianship and given bond was mandatory; that the defendant company knew that the deceased was a resident of New Jersey, that his second wife was a testamentary guardian appointed in and under the laws of that state, and was chargeable with notice that the powers of the guardian were regulated by and depended upon the law of the domicile of the plaintiffs; and that the payment made to the guardian was made at the peril of the defendant.

In discussing the question whether the provisions of the law then before the court were directory or mandatory, the court said:

"The exercise by courts of a power to disregard a particular provision of a statute, on the ground that it is directory merely, is a delicate one, and

should be applied with great caution. The intention of the Legislature is the cardinal consideration in the construction of statutes, and whether a particular provision is mandatory or directory is to be determined from the language used and the purpose in view. Construing the various sections of the New Jersey statute together, it is plain, we think, that the first section quoted was intended to define the general powers of a testamentary guardian, and that section 48 was intended to prohibit and suspend the exercise by a testamentary guardian of the functions of his office until he should signify his acceptance of the office, and execute the bond required thereby. Obviously the object of the Legislature, in requiring the guardian to give security, was the protection of the ward. The Legislature was dealing with the interest of a class especially entitled to the protection of the law. It was a wise safeguard to require that a guardian, before intermeddling with the estate of the ward, should give security for its faithful administration, unless the parent dispensed with this precaution. It is impossible to suppose that the Legislature, in enacting section 48, intended simply to impose upon the guardian the duty of giving security, and not to make the duty imperative."

Ramon Gonzales, the tutor, not having given bond and qualified as required by law, was not authorized, but prohibited, from undertaking to sell the property of the minors or in any way intermeddling therewith, and the sale and transfer that he made of their property was void. Longpre v. Diaz, 237 U. S. 512, 35 Sup. Ct. 731, 59 L. Ed. 1080.

[2] The deed executed by the tutor to Fernandez & Bros. being void, they cannot acquire ownership by possession under section 1858 of the Civil Code, for that requires good faith on the part of the possessor, and one who acquires the property of a minor in a manner unauthorized by law is not a possessor in good faith. Longpre v. Diaz, 237 U. S. 512, 35 Sup. Ct. 731, 59 L. Ed. 1080.

[3] The record in the registry of property disclosed that Ramon Gonzales was the testamentary guardian or tutor of the minors domiciled in Porto Rico, but in name only. The defendants, Fernandez & Bros. and Silva, on examining the record learned these facts, if they were not aware of them before. They were also charged with a knowledge of the law which prohibited a tutor or testamentary guardian from meddling with or undertaking to sell the property of minors unless he had given bond and qualified as tutor, and being charged with this knowledge of the law, and aware of the fact that he had been simply named as a testamentary guardian, neither of these defendants can claim the benefits of section 1858 of the Civil Code, and Silva cannot avail himself of the benefits accorded a third party under sections 33 and 34 of the Mortgage Law, as it clearly appears from the record in the registry of property that the title of Fernandez & Bros. was void.

[4] We think the case is properly before us on this appeal, as the matter in issue between the plaintiffs and Fernandez & Bros. is not limited simply to the amount involved in the money judgment awarded the plaintiffs in the district court of San Juan against Fernandez & Bros., but concerned the title to the land as well, and that the motion to dismiss for want of jurisdiction must be denied.

We do not find it necessary to investigate and determine the questions relating to the accounting between the parties. There can be no doubt but that both Fernandez & Bros. and Silva, not being purchasers in good faith, must account for the fruits of the land during their possession. Longpre v. Diaz, 237 U. S. 512, 35 Sup. Ct. 731, 59 L. Ed.

1080. The questions of accounting will be passed upon in the Supreme Court.

The decree of the Supreme Court of Porto Rico is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the appellants.