## A. HARTMAN & CO. v. SANCHEZ.

(Circuit Court of Appeals, First Circuit. June 8, 1926.)

No. 1935.

1. **Appeal and error ⬅1033(7)—Defendant, having set up counterclaim in action for performance of contract for division of real estate, cannot complain because dismissal of counterclaim was without prejudice to right to defend in any other action.**

Where, in suit for performance of contract relative to division of property after survey, defendant's counterclaim, putting in issue title to certain tracts, was dismissed without prejudice to defend in any other action, held, that defendant cannot complain because dismissal of counterclaim was conditional.

2. **Boundaries ⬅26—Suit to enforce survey pursuant to agreement is appropriate proceeding to determine title to one of surveyed tracts, when both sides pleaded and tried their titles.**

Suit to enforce survey, made pursuant to agreement, is appropriate proceeding for determining disputed title to one of tracts surveyed, where both sides pleaded and tried their titles.

3. **Courts ⬅406(1).**

Decision of Porto Rico courts on question of fact as to title to tracts of land will not be disturbed by Circuit Court of Appeals, in absence of very plain error.

4. **Courts ⬅406(1).**

Only very plain error would warrant Circuit Court of Appeals in disturbing decision of Porto Rican courts on matter of local law, concurred in by both local courts.

Appeal from Supreme Court of Porto Rico.

Suit by Rosario Cintron Sanchez against A. Hartman & Co. Judgment for plaintiff was affirmed by the Supreme Court of Porto Rico, and defendant appeals. Affirmed.

Arthur Weed, of Boston, Mass., and José Tous Soto, of San Juan, Porto Rico (Herrick, Smith, Donald & Farley, of Boston, Mass., and Charles Hartzell and Carlos J. Torres, both of San Juan, Porto Rico, on the brief), for appellant.

José A. Poventud, of New York City, for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This is an appeal from a judgment of the Supreme Court of Porto Rico, affirming a judgment of the district court of Guayama.

Prior to September, 1917, the plaintiff and defendant owned adjacent estates, and there were doubts and discussion as to the boundaries and areas of their respective properties. As a result, under date of September 8, 1917, a contract was entered into, which (summarized) provided: That the plaintiff and defendant were the record owners of six described tracts constituting a single body of land; that it had been agreed that a surveyor, Caballero, should be employed to survey the properties; that, if the survey showed an acreage in excess of or less than that appearing in the record deeds, the excess or deficit should be divided in proportion to the area of their respective properties; that in making the survey the owners of the adjoining properties should be summoned by the marshal of the district court; that all expenses should be divided equally; that each party should personally or by formal representative be present during the making of the survey.

The record titles of the parties, as recited in this contract, are, in the plaintiff: No.

1, the Caimital plantation, of 300 acres, reduced by later agreement to 288 acres; No. 2, 42 acres; No. 3, 10 acres—a total of 340 acres. The defendant's areas, thus shown, are: A, 246 acres; B, 80 acres; C, 25 acres—a total of 351 acres. These made a gross area, according to the record titles, of 691 acres.

Caballero proceeded under this contract and found in the entire tract an area of 709+ acres; an excess of 18+ acres, of which excess 6+ acres were found in the plaintiff's three parcels, and about 12 acres in the defendant's three parcels. The surveyor made the usual chart of survey and apportioned the excess in a manner not now in dispute. The plaintiff duly accepted the results of the survey; but the defendant refused to abide by the results.

Thereupon the plaintiff brought in the district court of Guayama a suit entitled "Performance of Contract," and in the complaint set up the proceedings just sketched, and prayed for a judgment to the effect that the plaintiff was the owner of the 340 acres indicated in the record titles of parcels 1, 2, and 3, and was also the owner of her proportion of the excess acreage of 18+ acres, divided in accordance with the contract.

The defendant, in a long answer and counter complaint, denied the plaintiff's title to 80 acres of the 340 shown in plaintiff's deeds—42 acres (tract No. 2), and 38 acres from tract No. 1—and sought to have adjudged invalid both the contract of survey and the plaintiff's recorded titles to these tracts of 42 and 38 acres, on the ground that the defendant had, in its title to the 80-acre tract B, a superior title to the same land.

A long trial ensued, in which both parties adduced numerous deeds and much evidence, both as to the history of the controversy and as to facts bearing upon the validity of the alleged conflicting titles. Under date of September 27, 1921, the district court filed a long opinion and entered judgment for the plaintiff. In this opinion the district judge says:

"The plaintiff entitles the action as one for performance of contract, but the pleadings show that she seeks to obtain from the court a declaration upon the ownership of the properties in controversy and prays for the delivery of certain pieces of land. In answering the complaint the defendants set up a counterclaim, in which they pray for a judgment upon the titles to the said property and for the annulment of certain records in the registry of property and of a contract for a survey. Hence, by the pleadings of the parties, this is not an action for performance of contract, but rather one for clearing titles to real property and the recovery of certain farm properties based on a contract.

"The questions raised are all questions of fact, and the court must consider the evidence examined and connect it with the contract made by the parties. * * *

"As appears from the said contract, in order to give it effect it is necessary to determine what are the real titles of ownership shown by each party, and so settle in accordance therewith the legal areas of the properties belonging to them. * * *

"The controversy is as follows: The defendants allege that plaintiff's property B, of 42 acres, forms a part of and is included in this property E, of 80 acres, and that in plaintiff's property A are included 38 acres that form a part and complete their property of 80 acres."

The trial court found that it was undisputed that the entire area of the six tracts was 18+acres in excess of the areas called for by the record titles of the six tracts; also that the defendants were in possession of 440.52 acres, and the plaintiff of only 268.80 acres. There follow several pages of discussion of the evidence in support of defendant's claim that there was duplicity of title as to the 80-acre tract. The court expressly found that the agreement for survey "was made for the purpose of determining the existing controversies and was entered into with all the solemnities of law." The conclusions embodied in its judgment were:

"A. That the contract made between the parties is valid and should be complied with according to its contents.

"B. That the plaintiff and the defendants are the owners, respectively, of the properties shown by their titles; the properties of the plaintiff having an area of 340 acres, and those of the defendants an area of 351 acres, making a total, according to their titles, of 691 acres.

"C. That the survey made of the properties showed a total area of 709.07 acres; there being, consequently, an excess of 18.07 acres.

"D. That in accordance with the said contract the defendants are adjudged to divide with the plaintiff the excess of 18.07 acres in proportion to the area of their properties as shown by their titles.

"E. That, as the allegations of the counter complaint have not been duly proved, the court dismisses it without prejudice to the

rights of the party to defend in any other action.

"F. The defendants are adjudged to pay to the plaintiff the costs and attorney's fees."

The defendant thereupon appealed to the Supreme Court of Porto Rico, where the case seems to have been pending from the latter part of 1922 until February 26, 1925, when the court affirmed the judgment below. The opinion of the Supreme Court is brief. This opinion, after reciting the judgment below, refers to the 11 errors assigned—the seventh of which is, "In deciding the conflict of titles in favor of the plaintiff;" the eighth, "In considering that the titles of the plaintiff were insufficient to show the ownership of several parcels of land;" the ninth, "In not considering that the essential facts of the counter complaint were established."

It thus clearly appears that in the Supreme Court the case considered and determined was the disputed title to the 80-acre tract. The conclusion of that court is stated in a long, involved, single sentence, the lucidity of which may have suffered in translation. But it is clear that that court held that the contract for a survey was entered into by the parties in order to solve prior existing difficulties, of which the parties had full knowledge; that the survey showed an area sufficient to cover the acreage described in the record titles, with a surplus of a few acres; that it was impossible to hold that the lower court erred in not considering the defendant's claim that its title to the 80-acre tract covered the plaintiff's 42-acre tract and 38 acres out of her 288-tract. The result was that the judgment of the District Court was affirmed, except as to costs. It is true that two of the justices dissented; but his court is without the benefit of any opinion by them, showing the grounds of their dissent.

The case comes here under four assignments of error, which abbreviated are:

(1) In affirming the judgment below.

(2) In not considering the alleged conflict of titles as a basis for the contract of survey.

(3) In sustaining the contract without first considering the alleged duplicity of titles.

(4) In affirming the dismissal of the defendant's counter complaint, "and also reserving certain rights to the defendant appellant for the establishment of future action and defenses." This obviously refers to the dismissal of the counter complaint "without prejudice to the rights of the party to defend in any other action," as set forth in paragraph E of the judgment of the district court.

[1] The first three assignments are without merit; for, as noted above, it is plain that both courts did consider the alleged conflict of titles and determined this issue of fact against the defendant. As to the fourth assignment, whatever significance the dismissal of the defendant's counter complaint "without prejudice" may have, we cannot see that the defendant, now appellant, is harmed by such reservation of rights, if there be, in the light of the entire record, any reservation of rights as to the 80-acre tract. It would seem that the plaintiff, and not the defendant, might well complain of this conditional dismissal of the counter complaint.

But, interpreting the judgments of both courts in the light of the opinions and of the evidence, we think it clear that both courts regarded, as on the pleadings, and the evidence (both) they were bound to regard, the suit as a proceeding to try title, and that the title to the 80-acre tract was tried and determined in the plaintiff's favor by both courts.

[2] The first impression, that a suit to enforce a survey made pursuant to an agreement is not an appropriate proceeding for determining a disputed title to one of the tracts surveyed, is, on analysis of this record, found not well supported, for both sides pleaded and tried their titles. The case turned, not on the contract, or on the accuracy of the survey, or on the division of the excess, but upon the validity of the titles (or the alleged duplicity of titles) of the 80-acre tract, as already stated. The defendant's contention that the contract of survey was invalid is grounded solely on its contention that there was misrepresentation or error as to the plaintiff's title to the 80-acre tract. But, that issue being determined against the defendant, the contract, and what was done under it, became of no importance. There is no real controversy before this court as to the validity of the contract, considered merely as an agreement for survey and an allotment of the excess acreage found.

[3] The gist of the case, therefore, is that there was a question of fact as to the title to this tract of land, about 80 acres of which was apparently then in the defendant's possession; that both courts determined this issue of fact in the plaintiff's favor.

[4] The case falls under the general rule that only a very plain error would warrant this court in disturbing a decision on a matter of local law, concurred in by both local

courts. Roig v. Central Pasto Viejo (C. C. A.) 6 F.(2d) 106; Gandia v. P. R. Fertilizer Co. (C. C. A.) 291 F. 18, 20; Fernandez & Bros. v. Ojeda, 266 U. S. 144, 146, 45 S. Ct. 52, 69 L. Ed. 209.

We find no such plain error.

The judgment of the Supreme Court of Porto Rico is affirmed, with costs to the appellee.