## WILLIS et al. v. ANA MARIA SUGAR CO. et al.

Circuit Court of Appeals, First Circuit. December 27, 1927.

No. 2148.

- Limitation of actions ⬥➡44(6)—Action of revindication by heirs of deceased wife dying intestate in Porto Rico to recover realty held barred by limitation.

Action of revindication by heirs of deceased wife, who died intestate in 1876 in Porto Rico, to recover real estate, *held* barred by limitations.

In Error to the District Court of the United States for the District of Porto Rico; Wells, Judge.

Action at law by Royall H. Willis and others against the Ana Maria Sugar Company and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

Francis H. Dexter, of San Juan, Porto Rico, for plaintiffs in error.

Henry G. Molina, of San Juan, Porto Rico, for Ana Maria Sugar Co. and succession of Valdes.

Juan de Guzman Benitez, of San Juan, Porto Rico, and Ramon Siaca and Nelson Gammans, both of New York City, for Banco Territorial y Agricola de Puerto Rico.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This suit, filed March 11, 1925, is a real action—revindication. The two plaintiffs together seek to recover an undivided half interest in a sugar plantation of some 300 acres called Carmelita, near Mayaguez, and also $10,000 a year from May 28, 1906, as rents and profits. Jury was waived. At the close of the plaintiff's evidence the court granted the defendant's motion for a nonsuit, subject to plaintiff's exception. The case comes here on a writ of error, with a single assignment, challenging that ruling.

Plaintiffs ground their case on the alleged right of heirs of Sarah Jane Cuebas, who died intestate at Mayaguez on October 11, 1876, to an undivided half interest in Carmelita, as community property. The chief defenses—sustained by the court below—are prescription and lack of any evidence of any community property in Carmelita when Mrs. Cuebas died. The controlling facts are as follows:

Prior to 1867, Filipe Cuebas, a Spanish subject, native in Porto Rico, became domiciled in the state of New York, and on October 27, 1867, was there married by Henry Ward Beecher to Sarah Jane Willis. On March 18, 1869, Cuebas became an American citizen. On November 25, 1875, in London, he traded for Carmelita, with Moses, Levy & Co., assuming underlying mortgages of 45,000 pesos and agreeing to pay £13,000, secured by a mortgage of Carmelita to the vendors, and payable, £1,000 on February 28, 1876, the balance in installments of £2,000 and £3,000 in the years 1879 to 1883, inclusive. Nothing was paid at the time of the trade. The first installment of £1,000 was not paid until September, 1877, nearly a year after the death of his wife. When and how the balance of the purchase price was paid, the record does not show. It does appear that by November 6, 1883, Cuebas' debt to Moses, Levy & Co. had been reduced to 30,000 pesos, then made payable in installments; also that Cuebas had paid off one of the underlying liens assumed, of 13,000 pesos, by conveying on December 21, 1875, 59

cuerdas to Carbonell, the lien creditor. There is no evidence that, when Sarah Jane died, any property, ganancial or other, had been invested either by Cuebas or his wife in Carmelita.

It is also plain that, after his wife's death, Cuebas dealt with this property as his own, making payment of the purchase price from his own resources, or from those derived from his second wife, Josepha Padilla, whom he married on June 19, 1879. Josepha died on September 11, 1901, about six years before Cuebas' death. There is nothing in this record to indicate a settlement of her rights in the ganancial partnership. But we find it unnecessary to deal with that aspect of the defendant's contentions. There is neither evidence, nor presumption, that the full purchase price was not, in some form and at some time, paid by Cuebas.

The instrument or deed under which Cuebas took title from Moses, Levy & Co. on November 25, 1875, was not inscribed in the registry until May 30, 1892. That deed describes Cuebas as married, but does not give his wife's name. On June 3, 1896, Cuebas mortgaged Carmelita to the defendant Banco Territorial y Agricola (herein called the Bank) to secure 20,000 pesos, to be amortized in 30 years by the payment of 57,-501.60 pesos. In this mortgage, duly recorded, Cuebas stated that he was the sole owner of Carmelita, was married, but did not mention the name of his wife. On April 2, 1901, a new mortgage, also duly recorded, was given by Cuebas to the Bank for $14,900, described as the unpaid balance due upon the previous mortgage of June 3, 1896, but covering accrued and unpaid interest and charges, to an aggregate of $47,300. In this mortgage, also, Cuebas is described as married, but no name of his wife appears.

On May 3, 1904, the Bank began in the district court of Mayaguez foreclosure proceedings for nonpayment of this mortgage of April 2, 1901. The property was, under court order, sold at public auction on October 31, 1904, and bought in by the Bank for $19,300.79. The marshal's certificate of such sale, which was subject to redemption within one year, was duly recorded on November 29, 1904.

On February 15, 1905, on motion of the Bank, the court appointed a receiver who then took possession (ousting Cuebas), and who put the Bank into actual possession on October 5, 1905. Cuebas did not redeem within the prescribed year, which ended October 31, 1905. Thereafter confirmatory instruments were executed and recorded. Cuebas' possession of the premises ended on February 15, 1905, more than 20 years before this suit was brought.

The Bank subsequently leased the property to one Valdez, with an option to purchase. Valdez bought the property in 1912, and sold it to the present owner, the Sugar Company, in 1913. These transactions were evidenced by appropriate instruments duly recorded.

We assume, but without deciding, that the rights of the heirs of Sarah Jane Cuebas were, on her death on October 11, 1876, determinable under the community property law of Porto Rico, and not under the laws of New York. But both husband and wife were citizens of the United States; they were married in the United States, and in the deed of Carmelita of November 25, 1875, Cuebas is described as then resident in the United States. Possibly the evidence warrants an inference that before his wife's death in October, 1876, Cuebas had changed his domicile to Mayaguez, where he was born. Cf. Bartholomew v. Allen, 24 P. R. 347; Cothran v. Registrar of Arecibo, 25 P. R. 602.

When (if ever) the rights of Sarah Jane's heirs accrued (on October 11, 1876) no ganancial or other property had gone from either husband or wife into Carmelita. The court below was correct in so holding. But if the heirs of Sarah Jane ever had any arguable right in Carmelita, it is plainly barred by prescription both under the 30-year provision (Civil Code, §§ 1860, 1864), and under the 20-year provision (sections 1851, 1853, 1858).

Statutes of limitation (prescription) are provisions necessary for peace and security in property rights. They rest on sound principles of justice and public policy, like the analogous equitable doctrine of laches. They must be enforced fairly and effectively.

Plaintiff's counsel asserts: "Upon the death of Sarah Jane Willis the conjugal society was terminated, the powers of the husband over the ganancial portion of the wife ceased, and her half interest (gananciales) passed immediately to her heirs, by operation of law." And he cites Capo v. Fernandez, 27 P. R. 656, Santini v. Diaz San Miguel, 27 P. R. 746, and Hernandez v. Heirs of Cordova, 32 P. R. 274, as conclusive authority for his proposition that, immediately on Sarah Jane's death in October, 1876, her heirs could have maintained revindication, the present action, now brought by persons

who have acquired the rights of those heirs. This brings his contention clearly within the rule laid down in section 1870: "The time for the prescription of all kinds of actions, when there is no special provision to the contrary, shall be counted from the day on which they could have been instituted." Section 1866 does not create an exception to this rule; it simply prevents prescription against "the action to demand the division of the inheritance" (partition) among coheirs. This case is an action to establish a right to an undivided half interest, and its legal incidents—rents and profits—not for partition. Cf. De Castro v. Echarri, 20 Phil. 23; Bargayo v. Camumot, 4 Phil. 857; 1 Cyc. 1080. This real action (revindication) was prescribed in October, 1906, under the 30-year provision.

It is also clear that plaintiff's alleged right of action is barred under the 20-year provision in Civil Code, §§ 1851, 1853, 1858; and that the Bank and its successors in title were bona fide purchasers and possessors within the meaning of sections 436, 437. Fernandez v. Ojeda, 266 U. S. 144, 45 S. Ct. 52, 69 L. Ed. 209.

The Bank's rights as bona fide mortgagee go back to June, 1896, when it loaned 20,000 pesos on a mortgage from Cuebas, describing him as married, and without the slightest notice, actual or constructive, that his living wife was not the only wife he ever had. As purchaser at the foreclosure of this mortgage, the Bank's rights accrued as of a date not later than February 15, 1905, when the Bank took possession through a receiver under a title acquired in good faith. It is unnecessary to determine whether the 20 years began to run on February 15, 1905, or on some earlier date. The fact that Cuebas had a right (which he did not exercise) to redeem within a year from October 31, 1904, did not operate to keep the title open to attack by strangers to the whole mortgage transaction.

Plaintiffs' learned counsel apparently realized the unsoundness of his clients' highly technical claims in this property, and has therefore been constrained to resort to lengthy, repeated and entirely groundless contentions of intentional fraud, both by Cuebas and the Bank, against the heirs of Sarah Jane Willis. It is enough to say that, on careful examination and consideration of his brief of over 100 pages and of the very long record we find no support whatever for any contention of fraud, concealment, or unfair dealing of any kind, by any one, with relation to any rights, actual or theoretical, that the heirs of Sarah Jane Cuebas had in this property.

The judgment of the District Court is affirmed, with costs to the defendants in error.